**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND HOATHER, | : |
| Plaintiff, | : Civil Action No. 14-7629 (MAS) (LHG) |
| v. | : **MEMORANDUM OPINION** |
| FUGGI LAW FIRM, P.C., et al., | : |
| Defendants. | : |

**SHIPP, District Judge**

Plaintiff Raymond Hoather ("Plaintiff" or "Hoather"), proceeding pro se, brings suit against Fuggi Law Firm, P.C., Robert Fuggi, Ronald Rosa, Cathy Kozlej (together, "Fuggi Defendants"), Shore Community Bank ("SCB") and its past and present Board of Directors, Robert T. English (individually and as President of SCB), Rosanne Citta (together, "Bank Defendants"), Mark Callazzo (individually and as an officer of SCB), Callazzo Properties, RMS Title Company (together, "Callazzo Defendants"), the Law Firm of Howard Butensky, Howard Butensky (together, "Butensky Defendants"), Ostrowitz & Ostrowitz, Alan R. Ostrowitz (together, "Ostrowitz Defendants"), Mayor Thomas F. Kelaher, the Township of Toms River, and the Township Council of Toms River (together, "Township Defendants") (collectively, "Defendants"). Defendants have moved to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim.[1] (ECF Nos. 6, 9, 14, 28, 29, 39, 41, 46.) Fuggi Defendants

---

[1] Ostrowitz and Bank Defendants also move to dismiss pursuant to Rules 12(b)(2) and (b)(5) for lack of personal jurisdiction and improper service of process. (ECF Nos. 6-2, 28.) Township

have moved for sanctions against Plaintiff pursuant to Rule 11(b). (ECF No. 9-1.) Ostrowitz Defendants have also moved for summary judgment pursuant to Rule 56. (ECF No. 41.) Plaintiff opposed the motions (ECF Nos. 20-22, 31, 32, 47, 48, 51), and Defendants replied (ECF Nos. 25, 26, 34, 49, 52). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Defendants' motions to dismiss, denies Fuggi Defendants' motion for sanctions, and denies as moot Ostrowitz Defendants' motion for summary judgment.

## I.   Factual Background and Procedural History

In his Complaint,[2] Hoather asserts a wide range of claims, including fraud, conspiracy, malicious prosecution, abuse of process, malfeasance, deceptive practices, defamation, libel, negligent and intentional infliction of emotional distress, and infringement of his constitutional rights, as well as violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and several federal criminal statutes on the part of Defendants. (ECF No. 1.) Since 2009, separate and apart from the instant matter, Hoather has been a party to litigation involving all Defendants in one form or another.[3] He now claims that as a result of Defendants' fraudulent activities in

---

Defendants have also moved to dismiss the Complaint for violating the pleading standards of Rule 8(a). (ECF No. 39-1.)

[2] In the instant case, Plaintiff has filed both a Complaint and an Amended Complaint. (ECF No. 37.) To settle a dispute regarding the spelling of some of the Defendants' names, the Honorable Lois H. Goodman, U.S.M.J., ordered Plaintiff to re-submit his Complaint, amending only the names. In the interest of justice, the Court will read the two complaints in tandem. *See Rhett v. Disman*, 228 F. App'x 225, 227 (3d Cir. 2007) (instructing district court to construe an original complaint and an amended complaint as a single document where they would probably state a claim when read together, even though pro se plaintiff failed to attach original to amended complaint). Because the Amended Complaint and the Complaint are nearly identical, the Court will refer to them collectively as "the Complaint."

[3] *See Shore Cmty. Bank v. Atl. Fin. Grp.*, No. L-1754-09 (N.J. Super. Ct. Law Div. May 11, 2009); *Falato v. Fotografixusa, LLC*, No. 09-5232 (D.N.J. Oct. 13, 2009); *In re Raymond Ronald*

connection with those previous suits, he has been forced into bankruptcy and has suffered business and emotional losses in excess of $81,000,000. (Pl.'s Cert. & Mem. ("Plaintiff's Certification") 207, ECF No. 1-1.)[4] Hoather also wishes to have the settlement agreement between himself and several Defendants from *Shore Community Bank v. Hoather* declared void.

In 2011, SCB, represented by Ostrowitz & Ostrowitz, instituted an adversary proceeding in bankruptcy court to oppose the discharge of Hoather's debts. *Shore Cmty. Bank v. Hoather*, No. 12-1209 (Bankr. D.N.J. Mar. 7, 2012). In that proceeding, Hoather filed a successful motion in limine to "Exclude Newly Discovered Forged Evidence," alleging that the documents used by SCB to support its claims were falsified. *Id.* Simultaneously, Hoather was embroiled in an ongoing civil suit in which the plaintiffs were represented by Fuggi Law Firm. (Pl.'s Cert. 15.) Hoather alleges that Fuggi Defendants based the claims in that suit on the same falsified documents and that the former plaintiffs have admitted as much. *Id.*

## II. <u>Subject Matter Jurisdiction</u>

All Defendants, except the Township Defendants, contest subject matter jurisdiction based on a lack of complete diversity. A district court does, however, have original jurisdiction where the plaintiff alleges a claim arising under the Constitution or the laws of the United States, unless the claim is "made solely for the purpose of obtaining jurisdiction" or it is "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946). Whatever the inadequacies of the claims

---

*Hoather*, No. 11-21226 (Bankr. D.N.J. Apr. 11, 2011); *Falato v. Hoather*, No. 11-2564 (Bankr. D.N.J. Nov. 14, 2011); *Shore Cmty. Bank v. Hoather*, No. 12-1209 (Bankr. D.N.J. Mar. 7, 2012).

[4] Plaintiff attached a Certification and Memorandum ("Plaintiff's Certification") to his first Complaint. This Certification contains the majority of the factual allegations on which he bases his claims. (Compl. ¶ 12.) The Amended Complaint was submitted without attachments, but did incorporate Plaintiff's Certification by reference. (Am. Compl. ¶ 12.) Because the paragraph numbering in Plaintiff's Certification is not continuous, the Court will refer only to specific pages.

3

may be, the Third Circuit has held that "dismissal [of a complaint] for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false." *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987). The Court, having reviewed the Complaint and having made all factual inferences in the light most favorable to Plaintiff, finds that Plaintiff has asserted at least one non-frivolous federal claim and thus the Court has federal question jurisdiction under 28 U.S.C. § 1331.

### III.    Failure to State a Claim

Defendants have moved to dismiss Plaintiff's claims based on Rule 12(b)(6), for failure to state a claim. A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the Court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Moreover,

4

"a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 94 (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what . . . the claim is and the grounds on which it rests.'" *Id.* at 93 (quoting *Twombly*, 550 U.S. at 555). A pro se pleading is required, however, to "set forth sufficient information to outline the elements of [a] claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Even when given the benefit of liberal construction, Plaintiff's Complaint fails to make sufficient allegations to support the elements of his federal claims for the reasons stated below.

### A. Section 1983

Plaintiff claims violations of his Fourth, Fifth, and Fourteenth Amendment rights by all Defendants through "attempted . . . incarceration" and the use of "manufactured evidence" in the previous suits. (Pl.'s Cert. 15, 54, 136.) To state a claim under § 1983, a plaintiff must allege the deprivation of his rights by a state official or a person acting under color of state law. 42 U.S.C. § 1983. "A person may be found to be a state actor when (1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

#### 1. Township Defendants

Plaintiff has sued Mayor Kelaher both individually and in his capacity as mayor of Toms River. He has also sued the Township of Toms River and its councilmembers. Though a municipality may be liable under § 1983 for monetary or injunctive relief, it will be liable only for actions directly attributable to the municipality itself; it will not be liable for the actions of its officers under a theory of respondeat superior. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385

(1989). A suit against a government employee in his official capacity is essentially a suit against the governmental entity itself. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Government employees sued in their personal capacities enjoy qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To state a claim against a municipality under § 1983, a plaintiff must allege that the municipality's policy or custom deprived him or her of a constitutional right. *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 282-83 (3d Cir. 2006) (citing *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).

Nowhere in his Complaint or Certification does Hoather allege facts demonstrating that any of the Township Defendants' actions deprived him of his rights. Mayor Kelaher received a letter from Fuggi Defendants informing him of a pending lawsuit against Hoather, which he then forwarded to the Ocean County Prosecutor's Office. (Pl.'s Cert. 21.) No action was taken in response to the letter, and Hoather does not allege that he actually suffered any harm from the correspondence. In the absence of any constitutional deprivation, Hoather cannot state a claim under § 1983. Accordingly, his claim as to the Township Defendants must be dismissed.

### 2. Other Defendants

None of the remaining Defendants are state actors. Private attorneys acting as such are not considered state actors "solely on the basis of their position as officers of the court." *Angelico*, 184 F.3d at 277. Plaintiff has not alleged that Defendants acted in concert with or obtained significant aid from state officials, apart from the correspondence sent to Mayor Kelaher. (Pl.'s Cert. 21.) Therefore, Plaintiff's § 1983 claims against the remaining Defendants are dismissed.

### B. Allegations of Criminal Violations

Plaintiff alleges conspiracy to pervert the course of justice (a violation of 18 U.S.C. § 371), bank involvement in the lottery (18 U.S.C. § 1306), and violations of bankruptcy laws (18 U.S.C. §§ 152, 156-57). (Pl.'s Cert. 138-39, 148-51, 168-72.) These claims are dismissed as to all Defendants, because none of the criminal statutes cited support a private civil cause of action.

### C. The Sherman Antitrust Act

Plaintiff references the Sherman Antitrust Act but does not allege any facts in support of this claim. (Pl.'s Cert. 88.) This claim is therefore dismissed as to all Defendants.

### D. RICO Claims

Plaintiff alleges that Defendants have violated RICO, citing 18 U.S.C. §§ 1961-1968. (Pl.'s Cert. 92-100, 105-107.) Plaintiff does not cite to a specific subsection of § 1962, but because Plaintiff does not allege either that he was injured due to investment of racketeering-produced income, or that Defendants actually acquired a business through such activities, Plaintiff may only potentially raise a claim under subsections (c) and (d) of § 1962. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991). Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 788 (3d Cir. 1984). It is also unlawful to conspire to do the same. 18 U.S.C. § 1962(d). "While RICO is primarily a criminal statute, it also provides for civil remedies, including a cause of action for treble damages, available to '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Seville*, 742 F.2d at 789; 18 U.S.C. § 1964(d). To state a cause of action under § 1962, a plaintiff must allege "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 289 (3d Cir.

7

1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985)). "In addition, the plaintiff only has standing [to bring a § 1962 claim] if he has been injured in his business or property by the conduct constituting the violation." *Id.*

### 1.  *Predicate Acts*

To sufficiently plead a pattern of racketeering activity, a plaintiff must allege two related predicate "racketeering" acts that pose a threat of continuing criminal activity. *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 232 (3d Cir. 2003) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 429 U.S. 229, 239 (1989)). In this case, Plaintiff alleges that Defendants committed mail and wire fraud as predicate acts to RICO violations. (Pl.'s Cert. 200-01.) "The federal mail and wire fraud criminal statutes, 18 U.S.C. §§ 1341 and 1343, prohibit use of the interstate mail or wires, for the purpose of conducting 'any scheme or artifice to defraud.'" *Ottilio v. Valley Nat. Bancorp*, No. 13-7154, 2014 WL 906138, at *2 (D.N.J. Mar. 7, 2014), *aff'd*, 591 F. App'x 167 (3d Cir. 2015). When a plaintiff alleges mail and wire fraud as the predicate acts, the complaint is subject to the heightened pleading standard for fraud under Rule 9(b). *Bonavitacola*, 87 F. App'x at 231. The circumstances of the fraud must be plead with particularity, meaning the complaint must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Annulli v. Panikkar*, 200 F.3d 189, 201 n.10 (3d Cir. 1999).

Here, Plaintiff alleges generally that all Defendants used "the US Mails" and "wires, fax, email and electronic methods to communicate . . . false claims of a 'Ponzi Scheme' and 'Bank Fraud' across state lines." (Pl.'s Cert. 201.) He does not identify any particular communications, aside from the letter to Mayor Kelaher, and in the instance of that letter, he fails to allege any facts

8

indicating it played any role in a scheme to defraud. For these reasons, Plaintiff fails to plead the predicate acts of mail and wire fraud with particularity.

### 2.     *A Pattern of Racketeering Activity*

In addition to pleading the requisite predicate acts, Plaintiff must also allege facts demonstrating that those acts constitute a pattern of racketeering activity. To determine whether a plaintiff has alleged a pattern, the Third Circuit considers the following factors: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Kehr Packages*, 926 F.2d at 1412-13 (quoting *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987)). "Of course, not every single scheme comprising two or more predicate acts will constitute a pattern." *Id.* at 1412. To establish a pattern, the predicate acts must satisfy tests for both "relatedness" and "continuity." *Id.* Related predicate acts have the same or "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." *Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 F. App'x 205, 211 (3d Cir. 2011) (quoting *H.J. Inc.*, 429 U.S. at 240). "Continuity refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.' A . . . scheme threatening no future criminal activity will not suffice." *Kehr Packages*, 926 F.2d at 1412 (quoting *H.J. Inc.*, 492 U.S. at 241).

Continuity is "both a closed- and open-ended concept." *Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir. 1995) (quoting *H.J. Inc.*, 492 U.S. at 241). A plaintiff may establish closed-ended continuity by "proving a series of related predicates extending over a *substantial* period of time." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). In *Tabas v. Tabas*, the court found that the defendants'

regular fraudulent misrepresentations extended for more than three years and that this satisfied the requirement for closed-ended continuity. *Id.* at 1294. In such cases, it is "the relatedness and the frequency of the predicate acts [that create] the pattern of racketeering activity." *Id.* at 1295.

Open-ended continuity involves the threat of future criminal activity. *See H.J. Inc.*, 492 U.S. at 241-42. This may be established either by the nature of the conduct[5] or by showing that "the [predicate acts] are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 243. "It is well settled that allegations of a single fraudulent scheme designed to deprive a single victim of his property on a single occasion do not adequately allege a RICO violation." *Ottilio*, 2014 WL 906138, at *3 (holding that allegations of collusion between lawyer and banker in foreclosure proceedings against a single plaintiff did not satisfy pattern requirement); *see also Banks v. Wolk*, 918 F.2d 418, 422 (3d Cir. 1990) (holding that continuity requirement was not satisfied where scheme "was an attempt to defraud a single investor of his interest in a single piece of real estate over a relatively short period of time").

Here, Plaintiff appears to be alleging a scheme that represents a concerted effort between Defendants to gain control of his real estate and business assets over a five-year period of litigation.[6] (Pl.'s Cert. 39.) The alleged predicate acts are mail and wire fraud, although, as discussed above, Plaintiff does not state with any specificity what those acts were or the role they played in the alleged scheme. His claims are based on allegations regarding the use of falsified evidence to institute the previous related suits (Pl.'s Cert. 41) and the mishandling of a mortgage

---

[5] The example given in *H.J. Inc.* is that of a "hoodlum" who offers "insurance" to neighborhood stores in exchange for protection from vandalism, "telling his victims he would be reappearing each month to collect the 'premium' that would continue their 'coverage.'" *H.J. Inc.*, 492 U.S. at 243.

[6] See *supra* note 3. Between the several suits, the litigation did drag out for five years, but the record in those cases suggests that this was due largely to discovery disputes and partly to Plaintiff's own failure to cooperate.

payment by Bank Defendants and Mark Callazzo (Pl.'s Cert. 25). He does not allege any other specific victims. In fact, throughout his Certification, Plaintiff states that the objective of Defendants' conspiracy was to obtain ownership of *his* assets and destroy his good name. Despite the lack of specificity in the pleadings, it does appear from the nature of the alleged scheme that any predicate acts would meet the requirement for relatedness, so the Court will focus its analysis on whether the allegations satisfy the continuity requirement: whether they "amount to or pose the threat of continuing criminal activity." *Tabas*, 47 F.3d at 1292 (internal quotation marks omitted).

In *Kehr Packages*, the Third Circuit discussed the effect that mail fraud allegations should have on a continuity analysis. "Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts (here, the mailings) may be no indication of the requisite continuity of the underlying fraudulent activity." *Kehr Packages*, 926 F.2d at 1414 (quoting *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990)). In that case, the court held that the plaintiff failed to establish a pattern of racketeering activity where, even though the complaint alleged several acts of mail fraud over a two-year period, all acts were directed towards the common purpose of forcing a single entity into bankruptcy. *Id.* at 1417. The court emphasized the need for "some further indication that the defendant's fraudulent activities are likely to continue." *Id.* at 1413.

Here, Plaintiff alleges a single scheme targeting only himself as a victim. Even though the litigation in which the fraudulent acts are alleged to have occurred lasted for five years, Plaintiff alleges at most two instances of falsification—the evidence used in the bankruptcy proceedings and the mishandling of the mortgage payment—that might form the basis of a RICO claim. He has not alleged facts to demonstrate either regular fraudulent activity over a substantial period of time or that Defendants normally conduct their business in a fraudulent manner. Without facts that

11

demonstrate the threat of continuing criminal activity, he cannot sufficiently allege a pattern of racketeering activity. Thus, Plaintiff's RICO claims must be dismissed as to all Defendants.

### IV. Granting Leave to Amend

In his opposition brief, Plaintiff requests leave to amend his Complaint to "separate and simplify the claims [he makes] against all defendants." (Pl.'s Opp'n Br. ¶ 47, ECF No. 20.) Whether to allow an amendment is within the district court's discretion, but the court should freely grant leave to amend unless doing so would be inequitable or futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* As discussed above, Plaintiff's § 1983 claims and alleged criminal violations cannot survive; therefore, amendment of those claims would be futile. With respect to the other federal claims, even though a plaintiff may not actually amend his complaint with statements made in an opposition brief, the Court may look at the statements made in the plaintiff's opposition papers to determine if an amendment would be futile. *Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 663 (D.N.J. 2010).

In the instant case, Plaintiff has filed eight opposition briefs in response to Defendants' motions. Each is essentially a reiteration of all of the allegations made in his more than 200-page Certification, and none offers any more clarity with regards to Plaintiff's federal claims. In light of the fact that Plaintiff has continued to allege only the same set of deficient facts across hundreds of pages, the Court finds that amendment of his complaint with respect to the federal claims would be futile. In *Wilkerson v. Superintendent Somerset SCI*, the Third Circuit affirmed the district court's dismissal where "none of the facts alleged in the [plaintiff's] complaint constituted a viable

claim" and his appellate brief did not "suggest that he could supplement the facts supplied in the complaint." *Wilkerson v. Superintendent Somerset SCI*, 574 F. App'x 140, 141-42 (3d Cir. 2014); *see also In re Burlington Coat Factory*, 114 F.3d at 1435 (affirming denial of leave to replead claims that district court dismissed on 12(b)(6) grounds); *Credico v. CEO Idaho Nat. Lab.*, 461 F. App'x 78, 79 (3d Cir. 2012) (holding that dismissal without providing leave to amend was appropriate where, in light of plaintiff's subsequent filings, it was clear that plaintiff could not state a claim for relief). Accordingly, the Court dismisses the federal claims with prejudice and does not grant Plaintiff leave to amend.

## V. Supplemental Jurisdiction Over State Law Claims

Plaintiff's remaining claims are based on state law. As stated above, all Defendants contest subject matter jurisdiction for lack of complete diversity. To satisfy complete diversity of citizenship, no plaintiff may be a citizen of the same state as any defendant. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). The plaintiff bears the burden of pleading the court's jurisdiction, and where he pleads diversity jurisdiction, he "must state all parties' citizenships such that the existence of complete diversity can be confirmed." *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999). The "Court can only 'properly determine whether complete diversity of the parties in fact exists and thus whether the Court has jurisdiction to adjudicate the matter' when the plaintiff, even if proceeding *pro se*, affirmatively pleads facts regarding the citizenship" of each defendant. *Phillip v. Atl. City Med. Ctr.*, 861 F. Supp. 2d 459, 467 (D.N.J. 2012).

Plaintiff claims Florida citizenship, but Defendants dispute this claim. (Pl.'s Cert. 100.) Plaintiff offers a temporary address in Toms River, New Jersey. *Id.* He has attached as an exhibit a photograph of his "new home," a recreational vehicle, or RV, without any information

identifying its location. (Compl., Ex. RH-C-18, ECF No. 1-2.) Defendants point out that Plaintiff's previous Florida residence, a condominium, has been foreclosed (Ostrowitz Defs.' Mot. Dismiss 7) and Plaintiff has not alleged any other facts to support his claim of Floridian citizenship. Furthermore, in his Certification Plaintiff simply alleges that all Defendants are citizens of New Jersey, and names several Defendants "care of" their local businesses. (Pl.'s Cert. 100-01.) *See Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 275 & n.1 (3d Cir. 2012) (holding that plaintiff failed to adequately plead subject matter jurisdiction where complaint only listed an address for each defendant). For these reasons, Plaintiff has failed to adequately plead diversity jurisdiction.

In the absence of diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. A district court's exercise of supplemental jurisdiction is discretionary: "[t]he district court[] may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (internal quotation marks omitted). "Needless decisions of state law should be avoided . . . to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

In the present case, the relevant factors weigh in favor of declining supplemental jurisdiction. Plaintiff's claims have been dismissed prior to any potential trial date, the remaining

claims are primarily are based on state law, and Defendants are all residents of New Jersey. Furthermore, the Court's decision to decline jurisdiction will not affect Plaintiff's ability to bring his claims elsewhere. Plaintiff will be afforded time to renew his state law claims in another forum regardless of the applicable statute of limitations. 28 U.S.C. § 1367(d) ("The period of limitations . . . shall be tolled while [an asserted] claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

## VI. Rule 11 Sanctions

A court may, on its own motion, order a Plaintiff to show cause why his submissions are not filed for an improper, malicious, or frivolous purpose in violation of Rule 11(b). Fed. R. Civ. P. 11(c)(3). Fuggi Defendants, in their moving brief, have requested that the Court issue such an order (Fuggi Defs.' Mot. Dismiss 25), however, motions for Rule 11 sanctions must be made separately from other motions. Fed. R. Civ. P. 11(c)(2). Furthermore, the Court finds that, despite the difficulty involved in deciphering his verbose Complaint and Certification, Plaintiff may have alleged facts sufficient to assert some state law claims. Therefore, based on the foregoing, the Court declines to issue sanctions against Plaintiff.

## VII. Conclusion

For the aforementioned reasons, Defendants' motions are granted in part and denied in part. Defendants' motion to dismiss is granted with prejudice as to the federal claims, and without prejudice as to the rights of Plaintiff to re-file state law claims in state court. For the same reasons,

Ostrowitz's motion for summary judgment is dismissed as moot. Fuggi Defendants' motion for sanctions is denied. An appropriate order accompanies this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**United States District Judge**

Dated: July 30th, 2015